USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 11/15/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>KROUCHE DELEON,<br><br>Defendant. | 13-cr-0811 (ALC)<br><br>**OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

The Government charged Krouche Deleon (hereinafter, "Defendant" or "Mr. Deleon") with one count of stealing an automobile by assaulting another and one count of conspiracy to burglarize pharmacies of controlled substances. In January 2017, Mr. Deleon pleaded guilty to both counts of the Superseding Information. He now desires to withdraw his guilty plea and proceed to trial. For the following reasons, Mr. Deleon's motion to withdraw his guilty plea is hereby DENIED.

## BACKGROUND[1]

### I. Preliminary Proceedings

On January 7, 2016, Superseding Indictment S7 13 Cr. 811 (ALC) charged Mr. Deleon with one count of conspiracy to burglarize pharmacies, in violation of 18 U.S.C. § 2118(d), and one count of conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846. ECF No. 399; ECF No. 642 ("Def's Memo"). On February 17, 2016, Superseding Indictment S1 16 Cr. 108 (SAS) charged Mr. Deleon with one count of conspiracy to commit robbery, in violation of 18 U.S.C. § 1951, one count of attempted robbery, in violation of 81 U.S.C. §§ 1951 and 2, and one count of carjacking, in violation of 18 U.S.C. §§ 2119(1) and 2. Def's Memo; ECF No. 643

---

[1] This recitation of facts is based on the docket in this action as well as the affidavits submitted with Mr. Deleon's motion to withdraw his guilty plea. *See* ECF Nos. 638-654 (together, "Tr.").

("Gov't Memo"). On August 19, 2016, Robert Soloway, Esq. ("Prior Counsel") substituted as counsel for Natali Todd, Esq. and proceeded to represent Mr. Deleon in both matters. *Id.*

## II. Plea Negotiations

On November 8, 2016, the Government offered Mr. Deleon a plea agreement ("Plea Agreement") whereby Mr. Deleon would plead guilty to a Superseding Information charging him with two counts: (1) carjacking in or around February 21, 2011, in violation of 18 U.S.C. § 2119; and (2) conspiracy to burglarize pharmacies from, at least, in or around January 2011 up until October 2012, in violation of 18 U.S.C. § 2118(d). Gov't Memo at 3. The Superseding Information was filed on January 3, 2017. ECF No. 485. Mr. Deleon consented to prosecution by information on the same day. ECF No. 486. The parties stipulated that Mr. Deleon's offense level was 27, and the Plea Agreement yielded a Guidelines sentencing range of 130 to 162 months imprisonment. ECF No. 639 (Affirmation of Richard B. Lind ("Lind Aff.")).

## III. Mr. Deleon's Guilty Plea

Mr. Deleon appeared before this Court on January 3, 2017 and pleaded guilty to both counts outlined in the Plea Agreement. ECF No. 640-3 ("Plea Tr."). During the hearing, this Court meticulously discussed the charges and Plea Agreement with Mr. Deleon. *Id.* He affirmed, under oath, that he fully understood his rights, was satisfied with counsel's representation, and was pleading guilty because he was in fact guilty of the charges. *Id.*

As the record indicates, the Court and Mr. Deleon had an in-depth exchange regarding his mental state. Plea Tr. 4:21-11:7. Mr. Deleon outlined his treatment and counseling as a child, as well as his current meditation practice and treatment for seizures and back pain. *Id.* 5:21-9:11. Mr. Deleon stated that the medication did not affect his thinking and decision making. *Id.* 9:12-15; 10:14-16. The Court found Mr. Deleon competent to proceed. *Id.* 11:5-7.

Next, the Court informed Mr. Deleon that he had a Constitutional right to be charged by an indictment of a grand jury, and that he could waive that right and consent to being charged by information of the United States Attorney. Plea Tr. 11:5-7. Mr. Deleon acknowledged that he had seen a copy of the Superseding Information, that he discussed it with his attorney, and that he understood the nature of the charges. *Id.* 11:13-22. In order to ensure clarity and understanding, the Court continued on to describe the two charges contained in the Superseding Information. *Id.* 11:23-14:1.

The Court also explained the grand jury process, emphasizing to Mr. Deleon that a grand jury may or may not indict him. Plea Tr. 14:7-15:14. Defendant informed the court that he wished to waive his right to indictment by a grand jury. *Id.* 15:15-21. The record indicates that, following this exchange, the Court entered a not guilty plea on Mr. Deleon's behalf to the charges in the Superseding Information. *Id.* 16:20-21. The Court further explained Mr. Deleon's right to continue to plead not guilty, his right to a speedy and public trial by jury, the appointment of an attorney, and the presumption of innocence. *Id.* 17:5-18:2. The Court also detailed the process of a jury trial and the standard requiring the government to prove each element beyond a reasonable doubt in order for a conviction to stand. *Id.* 18:3-7. The Court then walked through each element of both charges, asking Mr. Deleon if he understood the elements as they were being discussed. *Id.* 18:9-22:21. The Court reiterated that, even if Mr. Deleon were guilty, he was not required to plead guilty, which Mr. Deleon declared that he understood. *Id.* 22:22-24.

After discussing the grand jury and trial process, the Court outlined sentencing, the presentence report, and the Sentencing Guidelines calculation. Plea Tr. 23:7-17. The Court also explained that the Sentencing Guidelines are advisory, that the Court is not required to follow

that guideline range, that an unsatisfactory guidelines range is no grounds for the withdrawal of a plea, and that an unsatisfactory sentence is no grounds for the withdrawal of a plea. *Id.* 23:21-24:13. Defendant stated that he understood all of this. *Id.* The Court further emphasized that there were no promise as to the guideline range or what his sentence would be, which Mr. Deleon also agreed with. *Id.* 24:14-17.

The Court shifted gears to discuss the Plea Agreement. Plea Tr. 24:18-19. Mr. Deleon affirmed that his signature was on the document, that he had read the document, reviewed it with his lawyer, that it contained the entirety of the agreement, and that he understood it. *Id.* 24:19-25:6. The Court continued on to explain the applicable statutory penalties including terms of imprisonment, supervised release, and fines for both counts. *Id.* 15:12-26:24. The Court once again reiterated that the Government's guidelines estimate was not binding on the Court. *Id.* 27:4-8. After the Court addressed citizenship and the statutory right to appeal, the Court turned to Mr. Deleon's representation. *Id.* 27:10-28:8. Defendant unequivocally stated that he was satisfied with his legal representation. *Id.* 18:17. Prior Counsel denied the existence of a reason why Mr. Deleon should not plead guilty and was unaware of any legal defense to the charges. *Id.* 28:18-23.

After the Court's thorough examination and explanation of the Plea Agreement and Mr. Deleon's rights, the Court asked Mr. Deleon if he was willing to give up his right to a trial and all the other rights discussed. Plea Tr. 28:24-29:1. He answered in the affirmative. *Id.* 19:2 Mr. Deleon indicated that no promises and no threats were made forcing him to give up those rights. *Id.* 29:3-9. Mr. Deleon then pleaded guilty to Count One and Two of the Superseding Information. *Id.* 29:10-12.

4

Upon pleading guilty, the Court asked Mr. Deleon to describe what he did to make him guilty of those crimes. Plea Tr. 29:13-14. Regarding to the conspiracy to burglarize pharmacies, Defendant stated that he "participated in – with my friends ... to break into a pharmacy, to try to get the pills from the pharmacy ... to sell it and make money ..." *Id.* 29:15-18. When asked about each element of the charge, Mr. Deleon admitted that he agreed to participate in the burglary with other people, he understood that the purpose of the agreement was to burglarize these pharmacies, entered the pharmacies without permission, and that he did so with the intent to steal drugs and sell them. *Id.* 30:6-18. Additionally, Mr. Deleon admitted that the drugs were illegal, that he intended to sell them on the street, and that the replacement cost of the drugs to the pharmacy was more than $500. *Id.* 30:20-31:3. The government added that the pharmacy in question was registered with the DEA. *Id.* 30:6-9.

Regarding to the carjacking, Mr. Deleon stated that he went "to go and grab this guy and take the keys away from him so we'll be able to take his car and everything ..." *Id.* 31:25-32:3. Mr. Deleon provided more detail by stating, "when he got out the car, we sneak in behind him and my other friend, 'cause he's big, he grab him through the back, and me being little and fast, I went in his pocket quick and took his keys, and we ran away and we went in the car, started off, ... and I just left, with his car and everything." *Id.* 32:6-11. When going through the elements of Count Two, Mr. Deleon admitted to agreeing to steal a car, stealing the car by a use of force (a chokehold in particular), removing the keys from the person's pocket, and driving away in the car. *Id.* 32:12-33:2. Additionally, Mr. Deleon admitted that he took the car with the intent to cause serious bodily harm, and the government added that the car had previously been shipped in interstate commerce. *Id.* 33:6-23. After this thorough exchange, the Court found Defendant

5

competent to proceed and that there was a factual basis for the plea. *Id.* 34:9-12. Ultimately, the Court accepted Mr. Deleon's plea of guilty. *Id.*

## IV.  Post-Plea Proceedings

The original sentencing hearing was set for April 13, 2017. Plea Tr. 34:13-14. However, on eight different occasions, the sentencing hearing was adjourned to a later date. ECF Nos. 536, 286, 591, 610, 613, 615, 616, 626. Ultimately, the sentencing hearing was scheduled for February 7, 2018. ECF No. 626. Prior Counsel was responsible for corresponding with the Court in regards to extensions and adjournments. On February 5, 2018, two days before the sentencing hearing, Mr. Deleon filed a letter with the court requesting to change his plea from guilty to not guilty. ECF No. 621 ("Deleon Letter"). In his letter, Mr. Deleon suggested that his attorney had not been honest regarding his sentence, and thus he was misled into pleading guilty. *Id.* The allegedly dishonest actions of Prior Counsel led Defendant to express dissatisfaction with his representation and request new counsel. *Id.* Furthermore, Mr. Deleon claimed that he was actually innocent. *Id.* At the scheduled sentencing hearing, the Court relieved Prior Counsel of his duty and appointed Richard B. Lind ("Subsequent Counsel") as counsel for the defense. ECF Minute Entry 2/7/18. The official order was filed on February 14, 2018. ECF No. 631. The Court granted Mr. Deleon leave to submit a Motion to Withdraw a Plea of Guilty, due on May 11, 2018. *Id.*

## V.  Boamah's Motion to Withdraw His Guilty Plea

In his motion to withdraw his guilty plea, Mr. Deleon argues that his withdrawal is in accordance with Federal Rule of Criminal Procedure 11 because it is (1) timely, (2) he claimed legal innocence, and (3) any prejudice to the government is minimal. Def's Memo at 7. Additionally, Mr. Deleon suggests that Prior Counsel was ineffective in his assistance and

pressured him into his guilty plea. *Id.*; Lind Aff.; ECF No. 641 (Affirmation of Krouche Deleon ("Deleon Aff.")). Specifically, Defendant claims that Prior Counsel visited him only three times after Mr. Deleon's guilty plea and failed to provide discovery material. *Id.* Moreover, Mr. Deleon alleges that Prior Counsel assured him that he would be sentenced to 50 months, to run concurrently with his state sentence, and that he would be permitted to go home in five months. *Id.* The Government filed an opposition to Mr. Deleon's motion, and Subsequent Counsel filed a letter with this Court indicating that the defense would not be filing a response. Gov't Memo; ECF No. 644. On July 31, 2018, Prior Counsel submitted a declaration responding to Mr. Deleon's allegations. ECF No. 648 ("Soloway Aff."). Once again, Subsequent Counsel indicated in a letter that they would not be filing a response. ECF No. 651. At a status conference on July 11, 2018, this Court directed the parties to advise whether an evidentiary hearing was necessary to resolve Mr. Deleon's Motion to Withdraw his Guilty Plea and address the declaration by Prior Counsel. In a letter filed on August 3, 2018, Subsequent Counsel advised the Court and the Government that they would not be seeking an evidentiary hearing. ECF No. 651. The Government also advised that an evidentiary hearing would be unnecessary. ECF No. 652.

**LEGAL STANDARD**

**I.    Motions to Withdraw a Guilty Plea**

Courts have observed that a "guilty plea is a 'grave and solemn act,' not to be entered into or withdrawn lightly." *United States v. Rich*, 83 F. Supp. 3d 424, 430 (E.D.N.Y. 2015) (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997)). Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure allows a defendant to withdraw his or her guilty plea before the district court imposes a sentence if "the defendant can show a fair and just reason for requesting the withdrawal."

The relevant factors to consider in determining whether the high standard has been met include "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Schmidt*, 373 F.3d 100, 102-03 (2d Cir. 2004). A fourth factor courts look at is "whether the defendant has raised a significant question about the voluntariness of the original plea." *Id.* at 103 (internal quotation marks and alterations omitted). A defendant has the burden to show that there are valid grounds for withdrawing a guilty plea. *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016). Furthermore, should a defendant challenge the voluntariness of his or her plea, "bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

## II. Ineffective Assistance of Counsel

Ineffective assistance of counsel may render a guilty plea involuntary. *See United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005); *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992). Claims of ineffective assistance of counsel in this context are governed by the Supreme Court's test from *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant to establish that: (1) counsel's representation "fell below an objective standard of reasonableness" as measured under "prevailing professional norms;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694.

In the plea context, when evaluating counsel's performance under the first prong of the *Strickland* standard, "attorneys must, at the very least, communicate the terms of a plea offer to

8

their clients." *United States v. Nunez-Polanco*, 20 F. Supp. 3d 473, 479 (S.D.N.Y. 2014) (citing *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010)); *see also Missouri v. Frye*, 566 U.S. 133, 145 (2012) ("[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). This includes the obligation to inform the client "about the considerations that are relevant to her client's decision to accept or deny a plea bargain." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005); *accord Purdy v. United States*, 208 F.3d 41, 44-45 (2d Cir. 2000).

The showing required under the second *Strickland* prong depends on whether the defendant has accepted or rejected the plea offer based on alleged ineffective assistance of counsel. A defendant who has rejected a plea offer "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. The defendant "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Id.*

If, instead, the defendant chose to plead guilty, he must prove that, but for counsel's mistakes, he would have rejected the plea offer and proceeded to trial. *See Arteca*, 411 F.3d at 320 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The defendant must also show "that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). In making this determination, courts consider a number of factors, including whether (1) the defendant knew "that the advice on which he claims to have relied might be incorrect;" (2) pleading guilty led to more lenient sentencing; (3) "the defendant advanced any basis for doubting the strength of the government's case against him; and (4) the

Government could have prosecuted the defendant on additional counts. *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013)

## DISCUSSION

**I. Mr. Deleon's Guilty Plea Was Voluntary, and He Did Not Receive Ineffective Assistance of Counsel**

Mr. Deleon claims that he only pled guilty because of misleading information provided by Prior Counsel. Deleon Letter; *see* Def's Memo. According to Mr. Deleon, Prior Counsel assured him that his sentence would run concurrently with the sentence he was currently serving in New York State jail. *Id*; Deleon Aff. ¶ 4. More specifically, Mr. Deleon claims that Prior Counsel assured him that his sentence would be 50 months, and that he would be "permitted to go home" in five months. *Id.* Mr. Deleon further alleges that Prior Counsel did not meet with him a sufficient number of times after Mr. Deleon's plea, and he claims that Prior Counsel failed to adequately share and discuss discovery materials with him. *Id.*

In order to succeed on an ineffective assistance of counsel claim, Mr. Deleon must demonstrate that the allegedly false representations rendered his guilty plea involuntary. For the reasons discussed below, the Court finds that Prior Counsel did not provide Mr. Deleon with ineffective assistance and, even if he did, Mr. Deleon has failed to show any resulting prejudice.

**A. Prior Counsel's Representation Did Not Fall Below an Objective Standard of Reasonableness**

The Court rejects Mr. Deleon's contention that Prior Counsel's representation "fell below an objective standard of reasonableness" for three reasons. *Strickland*, 466 U.S. at 688. First, the Court credits Prior Counsel's declaration and corroborating documents that indicate that no assurances were made. Second, the record indicates that Mr. Deleon understood the sentencing

process and had not been promised any guideline range or sentence. Third, Mr. Deleon has offered no evidence to corroborate his claims.

In regards to Prior Counsel's declaration, the Court credits Prior Counsel's testimony that he made no assurances as to a sentence, rather he informed Defendant on the discretion of the Court and the general principles of sentencing. Soloway Aff. ¶ 5. In a meeting on October 12, 2016, Prior Counsel explained to Mr. Deleon that "it was up to the Judge to decide the terms of [the] sentence," and that while it was fully within the Court's power to run the undischarged term concurrently with this State term, the Court would most likely refrain from doing so due to the nature and lack of relation between the offenses. *Id.* Prior Counsel documented this exchange in a memorandum dated October 12, 2016. ECF No. 648-1. Not only did the disclosure not fall below an objective standard of reasonableness, the advice and disclosure was appropriate and suitable. *See Greiner*, 428 F.3d, 88.

In addition to crediting Prior Counsel's testimony, this Court specifically addressed the issues and allegation presented by Mr. Deleon during the Plea Hearing on January 3, 2017. Plea Tr. 23:7-24:17. This Court informed Mr. Deleon that the sentencing guidelines were advisory and that the Court need not adhere to them:

| | |
|---|---|
| COURT: | Sentencing Guidelines are advisory. What that means is, while I am required to determine the guideline range that applies to your case, once I make that determination, I am not required to sentence you within that guideline range. Do you understand? |
| DEFENDANT: | Yes, sir. |
| COURT: | I will make the determination as to the guideline range that applies to your case and I will decide the ultimate sentence in your case. Do you understand? |
| DEFENDANT: | Yes, sir. |

*Id.* 23:21-24:5. This Court also discussed withdrawal as a reaction to a particular guidelines determination or sentence:

| | |
|---|---|
| COURT: | If the guidelines range that I determine is different than what you were hoping for, that will not be a ground for you to take your plea back. Do you understand? |
| DEFENDANT: | Yes, sir. |
| COURT: | Similarly, if the sentence that I impose is different than what you were hoping for, that will not be a ground for you to take your plea back. Do you understand? |
| DEFENDANT: | Yes, sir. |

*Id.* 24:6-13. The Court also specifically discussed promises pertaining to sentencing and accepting a plea agreement with Mr. Deleon:

| | |
|---|---|
| COURT: | As you sit here today, there is no promise as to what your guideline range will be, nor is there a promise as to what your sentence will be, do you understand? |
| DEFENDANT: | Yes, sir. |
| COURT: | Other than what's contained in your agreement with the government, Court Exhibit 1, has anyone made any promises to induce you to give up those rights? |
| DEFENDANT: | No, sir. |

*Id.* 24:14-17; 29:3-6. The record indicates that Defendant made it explicitly clear that he understood the sentencing process, the discretion of the court, and that there were no promises pertaining to his sentence. His unsubstantiated and unsupported claim that he was promised an alternate sentence directly contradicts his sworn testimony – testimony that is given substantial weight. *See United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001).

Finally, and perhaps most importantly, aside from the directly contradictory claims in Mr. Deleon's letter presented to this Court two days before his sentencing, Mr. Deleon has offered no evidence to corroborate his claims and satisfy his burden to prove that Prior Counsel's conduct fell below an objective standard of reasonableness. Mr. Deleon has not provided this Court with any reason to disregard Prior Counsel's sworn declaration and the statements made in front of this Court at the Plea Hearing.

Prior Counsel's testimony, Mr. Deleon's own statements in the record, and a complete lack of supporting evidence all lead this Court to determine that Prior Counsel's representation did not fall "below and objective standard of reasonableness," and thus the first prong of the *Strickland* test is not satisfied. 466 U.S. at 688

### B. Mr. Deleon Has Not Shown That But For Counsel's Ineffectiveness, The Result of the Proceeding Would Have Been Different

Even assuming Prior Counsel's representation failed to satisfy "prevailing professional norms," Mr. Deleon has not satisfied the second prong of the analysis by demonstrating that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As stated, aside from a bare assertion in his letter that he was prepared to go to trial, Mr. Deleon simply has not provided any evidence that he would have, in fact, gone to trial rather than accept a guilty plea. Mr. Deleon did not indicate how or why the statements he made in open court were false. Mr. Deleon did not indicate that he would not have accepted any other agreement. Mr. Deleon did not indicate why he did not address any of these issues sooner. Nor did Mr. Deleon point to any evidence contradicting that he pleaded guilty knowing that there could be no promises as to his sentence.

Moreover, as stated, the Court is "entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving [certain rights]," and was satisfied with his counsel. *Hernandez*, 242 F.3d at 112; *accord United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (statements during plea allocution have "such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made"). At the risk of being redundant, during his guilty plea allocution, Mr. Deleon confirmed that he had discussed his decision to plead guilty with Prior Counsel. Plea Tr. 16:7-9. He further confirmed that he understood the various rights he was preserving and giving up by pleading guilty. *See generally*, Plea Tr. Both the Court and Prior Counsel explained Mr. Deleon's sentencing exposure to him. *Id.* 25:12-28:8. Without more, this Court simply does not have sufficient evidence to support Mr. Deleon's claim that his plea was involuntary.

### C. Mr. Deleon Has Not Met His Burden To Demonstrate That His Guilty Plea Was Involuntary For Any Other Reason

While the brunt of Mr. Deleon's claim revolves around the ineffectiveness of Prior Counsel, Mr. Deleon has also failed to provide any evidence indicating that there are other reasons why his plea was involuntary. While Mr. Deleon refers to being "mislead" and "convinced" to plead guilty, once again, his allegations are accompanied by no support.

The Court will not vacate Mr. Deleon's guilty plea on the basis of references to "being convinced" and being "misslead (sp)." Deleon's Letter. As discussed above, Mr. Deleon made it very clear during his Plea Hearing that he understood his rights, understood the rights he was

14

forfeiting by pleading guilty, understood the charges against him, and understood what he was pleading guilty too. *See* Plea Tr. Further, the Court made sure to address the guideline and sentencing process with Mr. Deleon, all of which he unambiguously indicated that he understood. *Id.* 23:7-24:17. Prior Counsel stated in his declaration that he advised Mr. Deleon of the charges against him, any possible defenses, and that he was prepared to go to trial should Mr. Deleon so decide. Soloway Aff. ¶ 8. However, according to Prior Counsel, after these meetings, Mr. Deleon voluntarily and independently chose to plead guilty, a sentiment which he repeated at his Plea Hearing. *Id*; Plea Tr. Mr. Deleon has not offered any evidence of pressure or inappropriate conduct that would rebut Prior Counsel's statements and render a plea involuntary.

For all of these reasons, the Court finds that Mr. Deleon's guilty plea was knowing and voluntary.

## II. Mr. Deleon Is Not Otherwise Entitled to Withdraw His Guilty Plea

Considering the other ways in which Mr. Deleon might have a "fair and just" reason to withdraw his guilty plea also counsels against granting Mr. Deleon's motion. *See Schmidt*, 373 F.3d at 102-03. Two of the three factors weigh against allowing Mr. Deleon to withdraw his guilty plea, and the third factor is relatively neutral. First, Mr. Deleon has not sufficiently asserted his innocence here. Second, a considerable amount of time elapsed between Mr. Deleon's guilty plea and his first expression of a desire to withdraw that plea. Third, however, the Government would only be moderately prejudiced by a withdrawal of the plea.

The first factor—claims of innocence—cuts against allowing Mr. Deleon to withdraw his guilty plea. While Subsequent Counsel argues that Mr. Deleon is claiming actual innocence, mere repetition, without more, is insufficient. Def's Memo at 9. "Conclusory claims of innocence that leave the court guessing when a defendant is being truthful are inadequate to

support withdrawal." *United States v. Gonzalez*, 647 F.3d 41, 54 (2d Cir. 2011). At no point during the plea hearing or in the months after did Mr. Deleon ever suggest that he was innocent. While a motion to withdraw a guilty plea might indicate a belief in one's innocence, simply repeating contradictory statements without any evidence or support does not rise to the level of a claim of actual innocence. *See Torres*, 129 F.3d at 715. The number of times Mr. Deleon stated he was innocent in the singular letter he submitted to this Court two days before his sentencing hearing carries little weight unless it is supported by some other evidence. *Id*. For instance, during the Plea Hearing, Mr. Deleon gave a detailed account as to his involvement in the charged crimes. Tr. Plea 29:13-34:8. To this point, Mr. Deleon has yet to provide evidence or explanation as to why those statements were incorrect and why he is, in fact, innocent. Given this, the Court is concerned that granting Mr. Deleon's motion would "degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *Hyde*, 520 U.S. at 677.

The second factor—the amount of time that has elapsed—also weighs against granting Defendant's Motion to Withdraw his Guilty Plea. Mr. Deleon entered his guilty plea on January 3, 2017. Def's Memo at 2. He submitted his letter to the Court indicating an intent to withdraw his plea on February 5, 2018. *Id*. at 5. Courts have held that delays of far less time weighed against a defendant. *See, e.g.*, *United States v. Obiorah*, 536 F. App'x 53, 55 (2d Cir. 2013) (eight months) (citing, *inter alia*, *United States v. Grimes*, 225 F.3d 254, 259 (2d Cir. 2000) (five months)); *United States v. Wilson*, 828 F. Supp. 2d 679, 685 (S.D.N.Y. 2011) (two months), *aff'd*, 523 F. App'x 30 (2d Cir. 2013); *United States v. Baum*, 380 F. Supp. 2d 187, 206-07 (S.D.N.Y.), *aff'd sub nom. United States v. Best*, 139 F. App'x 366 (2d Cir. 2005) (three and a half months). Even accepting Mr. Deleon's claims that he desired to withdraw his plea in October 2017, the time elapsed still weighs against granting Mr. Deleon's motion. Def's Memo

at 8. While Mr. Deleon suggests that the delay was due to Prior Counsel's failure to meet with him, once again, Mr. Deleon points to no evidence that he would have withdrawn his plea before October 2017, even if he had met with Prior Counsel more frequently. *Id.* Rather, it seems like Mr. Deleon has simply changed his mind, and "a change of heart does not suffice." *Rich*, 83 F. Supp. 3d at 430.

Both the first and second factors weigh against allowing Mr. Deleon to withdraw his guilty plea. Therefore, the Government is not required to make any showing with respect to the third and final factor—prejudice to the Government. *See Torres*, 129 F.3d at 715. Consequently, the Court only briefly notes that, under the present circumstances, this factor is relatively neutral. Generally, this factor will weigh in favor of the Government where withdrawing the guilty plea would force the Government to quickly prepare for a trial it did not anticipate having to prosecute. *See United States v. Lopez*, 385 F.3d 245, 254 (2d Cir. 2004). Here, however, no trial date has been set. Additionally, the Government already conducted a trial of a similarly situated defendant meaning that much of the preparation has already been done. However, as stated in their brief, so much time has elapsed that there would be a negative effect on witness' memory and availability – issues that could have been avoided had Defendant decided to go to trial immediately. Furthermore, the Government would be forced to duplicate expenditures and, in the time that has elapsed since the Government first thought it was going to trial, memories may have faded. Gov't Memo. at 17; *see also, e.g., Baum*, 380 F. Supp. 2d at 207 (modest prejudice to prepare witnesses again).

Therefore, the balance of the factors weighs against granting Mr. Deleon's motion to withdraw his guilty plea.

## CONCLUSION

For all of the foregoing reasons, Mr. Deleon's Motion to Withdraw his Guilty Plea is DENIED.

Parties are hereby ORDERED to appear for a Sentencing Hearing on December 12, 2018, at 11:00 am in Courtroom 1306 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

**SO ORDERED.**

**Dated: November 15, 2018**
 **New York, New York**

_____
ANDREW L. CARTER, JR.
United States District Judge